**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**CHRISTOPHER BARTON, Defendant**

Criminal No. F29/2003

Territorial Court of the Virgin Islands

Divsion of St. Thomas and St. John

April 19, 2004

32

Denise George-Counts, Esquire, Assistant Attorney General, Department of Justice, St. Thomas, Virgin Islands, *Attorney for Plaintiff.*

Jesse M. Bethel, Esquire, Office of the Territorial Public Defender, St. Thomas, Virgin Islands, *Attorney for Defendant.*

KENDALL, *Judge*

## MEMORANDUM OPINION

(April 19, 2004)

THIS MATTER is before the Court on the Defendant's post-trial "Motion for Judgment of Acquittal, New Trial, Arrest of Judgment and Extension of Time." The Defendant files this Motion after having been

33

tried and convicted by a jury of three (3) Counts of Fraudulent Claims Upon the Government in violation of Title 14 V.I.C. § 843(2). Upon consideration of the Motion, Opposition and Reply to Opposition thereto, Defendant's Motion will be denied.

## I. Motion for Judgment of Acquittal

■ In deciding whether to grant a "Motion for Judgment of Acquittal" pursuant to Rule 29 of the F.R. CRIM. P., the Court:

> must view the evidence in the light most favorable to the verdict, and must presume that the jury has properly carried out its functions of evaluating credibility of witnesses, finding the facts, and drawing justifiable inferences. A verdict will be overruled only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the Defendant's guilt beyond a reasonable doubt.

*U.S. v. Coleman,* 811 F.2d 804, 807 (3d Cir. 1986). *See also, Government of the Virgin Islands v. Smalls,* 32 V.I. 157, 162 (1995) (Court must take the view of the evidence and the inferences therefrom most favorable to the Government). Furthermore, a conviction may be based on circumstantial evidence and it "need not be inconsistent with every conclusion save that of guilt, provided it does establish a case from which the jury can find the Defendant guilty beyond a reasonable doubt." *U.S. v. Giuliano,* 263 F.2d 582, 584 (3d Cir. 1959). In sum, *Government of the Virgin Islands v. Lima,* 774 F.2d 1245, 1249 (3d Cir. 1985), citing *Glasser v. U.S.,* 315 U.S. 60, 80, 62 S. Ct. 457, 469, 86 L. Ed. 680 (1942).

## A. Florida Court Order

Defendant argues that the main piece of evidence relied upon by the Government in its prosecution, the "Order of Ratification Upon Report of the General Master" issued by the Florida Court, is not an Order and thus could not be used to show that he made fraudulent claims to the Government.

At trial, however, there was substantial evidence to conclude that the Order was a valid Court Order. The Order states, *inter alia,* "that the report of the General Master dated, August 6, 1999, be and the same is hereby ratified and approved in all respects ..." and "the Court hereby

adopts each and every recommendation contained therein as this Court's Order." *See Government's Exhibit* 5. Additionally, the Order was signed and dated August 24, 1999, by Circuit Court Judge Robert Carney. *Id.* A copy of said Order was admitted into evidence having the raised seal of the Circuit Court of the 17th Judicial District of Broward County, Florida, which was affixed by Judge Carney himself.

In ratifying the General Master's Report, the Florida Court essentially found that: (1) Defendant and his wife shall have joint parental responsibility for the minor children, with the wife as primary residential parent; (2) Defendant shall return the minor children to Broward County; and (3) both parties are prohibited from leaving Broward County with the minor children. Defendant was aware of the Order because he filed his "Motion for Exceptions to the Report of the General Master" which was denied by Judge Carney in his Order dated September 15, 1999. Furthermore, there was testimony from the Defendant's wife, Mrs. Araceli Barton, who identified *Government's Exhibit* 5 as the Order from the Florida Court approving the General Master's Recommendations and testified to having received said Order. It is also evident that Judge Carney relied on his August 24, 1999, Ratification Order in issuing his "Order to Pick-Up Minor Children" dated November 30, 1999. *See Government's Exhibit* 7. It is quite clear from the record that the Government presented sufficient evidence to support the conclusion that there was a Florida Court Order ratifying the findings of the General Master's Report. Thus, the jury could reasonably rely upon the Order in determining whether Defendant fraudulently represented to the Territorial Court that there was no Order directing him to relinquish custody of his minor children to his wife.

## B. Fraudulent Misrepresentations of Material Fact

The statute under which Defendant was charged prohibits anyone from "knowingly and willfully falsifying, concealing or covering up by any trick, scheme, or device a material fact in any matter within the jurisdiction of any officer, department, board, commission, or other agency of the Government of the Virgin Islands." 14 V.I.C. § 843(2). Defendant contends that there was a total absence of substantial evidence of fraud against the Government to sustain the "guilty" verdict. *Defendant's Motion* at 2. In making the determination whether substantial evidence existed at trial upon which a reasonable jury could have

reached a "guilty" verdict, the Court must view all the evidence and reasonable inferences therefrom in the light most favorable to the Government. *United States v. Fredericks*, 38 F. Supp. 2d 396, 398, 40 V.I. 366 (D.V.I. 1999). It is apparent from Defendant's "Verified Petition for Custody" filed in the Territorial Court of the Virgin Islands that Defendant willfully concealed what was ordered by the Florida Court.[1] Also, during the Custody hearing before Judge Swan on September 7, 2000, Defendant stated that he "... was never ordered to relinquish custody ..." and that his "... wife voluntarily dismissed [the case] because her boyfriend threw her out and she wanted to get back with me ..."[2]

The evidence presented at trial that showed that: (1) the findings of the General Master's Report were adopted by the Florida Court on August 24, 1999, subject to exceptions; (2) that the General Master's Report and Ratification Order were issued to Defendant; (3) that Defendant was aware of the Court Order while he was residing in the Virgin Islands because he filed a Motion for Exceptions to the Report of the General Master which was considered and denied by Order dated September 15, 1999; (4) that Defendant filed a Verified Petition for Custody along with a request for an Emergency Hearing for Custody in the Family Division of the Territorial Court of the Virgin Islands on March 13, 2000; (5) that Defendant's petition concealed the nature of what he was ordered to do; and (6) that Defendant represented to and testified before the Territorial Court that he was not under any Order from the Florida Court regarding custody of his children.

Taking all of the evidence in the light most favorable to the Government and given the presumption that the Jurors properly dispatched their function, the Court concludes that there was substantial evidence upon which a reasonable jury could have reached a verdict that Defendant was guilty beyond a reasonable doubt of making fraudulent claims upon the Government. Accordingly, the Motion for Judgment of Acquittal must be denied.

---

[1] Defendant's *Verified Petition for Custody* filed March 13, 2000, states in paragraph 5 "... the Court in Florida upon a telephone conference hearing awarded custody of said minor children while they remained in the father's custody in North Carolina ..."

[2] Transcript of September 7, 2000, Custody Hearing, p. 31.

## II. Motion for a New Trial

Alternatively, Defendant moves, pursuant to TERR. CT. R. 135 and Rule 33(a) of the F.R. CRIM. P., for a new trial based upon newly discovered evidence.

### A. Legal Standard

█ Certain requirements must be met before a Court may order a new trial based upon newly discovered evidence. In *United States v. Iannelli,* 528 F.2d 1290 (3d Cir. 1976), the Court stated that: (1) the evidence must be in fact newly discovered, *i.e.,* discovered since trial; (2) facts must be alleged from which the Court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) the evidence must be material to the issues involved; and (5) the evidence must be such, and of such a nature that, on a new trial, the newly discovered evidence would probably produce an acquittal. *Id.* at 1292. *See also, United States v. Saada,* 212 F.3d 210, 216, 217 (3d Cir. 2000); *Government of the Virgin Islands v. Lima,* 774 F.2d 1245, 1250 (3d Cir. 1985). Although it may be advisable for a Court to analyze each prong of the *Iannelli* test, if it is determined that one factor has not been met, further analysis of the remaining factors is not required inasmuch as the failure to satisfy one element is sufficient to deny a Motion for a New Trial. *U.S. v. Jasin,* 280 F.3d 355, 365 (3d Cir. 2002).

### 1. "Newly Discovered Evidence"

With respect to the first requirement, the "newly discovered evidence" forming the basis of Defendant's Motion consists of affidavits from Florida Circuit Court Judge Robert Carney and defense witness Joyce Julian, Esq.

█ Judge Carney's affidavit is not evidence that has been newly discovered. Evidence known but unavailable at trial does not constitute "newly discovered evidence" within the meaning of Rule 33 of the F.R. CRIM. P. *Jasin, supra,* at 362. Judge Carney asserts in his affidavit that he did not specifically enter the original August 24, 1999 ratification Order into the official Court record and that his seal on the copy of said Order should not be construed as authenticating an original Court Order entered by him. *Judge Carney's Affidavit* at 2. The affidavit essentially

37

states that no custody Order was ever entered by him in this case and thus Defendant was never really ordered by his Court to do anything. *Id.* However, Judge Carney does acknowledge signing the original Ratification Order in August 1999[3] and he never indicates that he had vacated or rescinded that Order. Judge Carney's Ratification Order was disclosed to Defendant during discovery months before trial and Defendant had the opportunity to challenge the authenticity and validity of the Order at trial. Defendant also had ample time to obtain Judge Carney as a witness or depose him prior to trial. The Government even requested that Judge Carney be allowed to testify telephonically, but the Defendant opposed the request. *Government's Opposition* at 4. Accordingly, because the substance of Judge Carney's affidavit was known to Defendant well in advance of trial, it is not "newly discovered evidence."

Moreover, the circumstances surrounding the procurement of Judge Carney's affidavit is highly questionable. Specifically, Judge Carney's averrments were made after first conferring with defense witness Attorney Joyce Julian.[4] It is unknown what facts were given to Judge Carney regarding the case and the extent of Attorney Julian's involvement in the drafting of Judge Carney's affidavit, especially when it appears that she herself notarized the affidavit. According to Attorney Julian's affidavit, she returned to Florida on January 16, 2004, right after she testified in this case. It appears that all within the same day, Attorney Julian contacted Judge Carney and apprised him of the details the case, including the ratification Order containing his seal and he was able to retrieve the original Court file, review it and draft the affidavit that Defendant now submits to the Court as "new evidence."

Based on the foregoing, Defendant's assertion that Judge Carney's unsworn affidavit[5] constitutes "newly discovered evidence" must fail.

Likewise, Attorney Julian's affidavit is not "newly discovered evidence." In her affidavit, Attorney Julian states that she "... knew from

---

[3] Judge Carney's Affidavit, p.2, para. 2.

[4] *See* Attorney Julian's Affidavit, p.1, paras. 1-4. (Attorney Julian states that she contacted Judge Carney upon her return to Florida and explained to him that the raised seal copy of the Order was presented into evidence. Judge Carney then determined that it would be best if he reviewed the file and subsequently contacted Attorney Julian to express his wish to prepare an affidavit.)

[5] The affidavit's acknowledgement indicates that Judge Carney did not take an oath.

personal knowledge that no original order was contained in the Court file to have been Certified by the Judge ..." *Attorney Julian's Affidavit* at 1. The remainder of her affidavit explains how she obtained Judge Carney's affidavit. Not only was the substance of Attorney Julian's statements known to Defendant at trial, but Attorney Julian testified as a witness for Defendant regarding the validity of the Ratification Order. Accordingly, because Attorney Julian's affidavit basically reiterates part of her testimony at trial, it is not "newly discovered evidence."

## 2. Lack of Diligence

It is quite evident that there was a lack of diligence on the part of Defendant in discovering the "newly discovered evidence" in the form of Judge Carney's and Attorney Julian's affidavits. Based on the record, it is clear that Defendant knew of Judge Carney's Order.[6] In fact, nowhere in Defendant's Motions or the record does Defendant intimate that he was unaware of the substance of Judge Carney's Order. Also, Defendant knew for months prior to trial that Judge Carney presided over the proceedings in Florida. Attorney Julian was even a witness for the defense at trial and Defendant had more than ample opportunity to adduce all relevant testimony from her at that time. More importantly, Defendant has not alleged any facts from which the Court could excuse his lack of diligence in pursuing the assertions presented in the affidavits prior to trial. Accordingly, Defendant has failed to demonstrate due diligence in procuring the "newly discovered evidence" prior to trial.

## 3. Cumulative or Impeaching Evidence

With respect to the third requirement, the affidavits of Judge Carney and Attorney Julian are cumulative because the jury heard Attorney Julian's testimony regarding the significance of the General Master's Report and the Florida Court Order. Assuming the truth of the allegations contained in the affidavits, the most one could conclude from them is that a General Master's Report is not an Order and that the Order Ratifying the General Master's Report was never recorded and therefore was not entered into the official Court record, all of which the jury was

---

[6] *See* Affidavit of Christopher Barton, p. 3, para. 16, that was submitted to the Family Court in connection with his Petition for Custody, Family No. C12/2000. (Defendant stated that "... the Court awarded the Respondent and I temporary 'joint parental responsibility' with the Respondent having 'primary residential' custody.")

39

made well aware at trial. Accordingly, the Court deems the affidavits to be merely cumulative and offering no new evidence since they address issues that were litigated at trial.

### 4. Materiality of Evidence

With respect to the fourth requirement, neither proffered affidavit is material to the issue involved in this case, *i.e.,* whether the Defendant made fraudulent misrepresentations to the Government. At trial, it was determined that Defendant knew the substance of the General Master's Report and that there was a subsequent Order ratifying the Report. It was also determined that Defendant failed to disclose to the Territorial Court the findings of the Florida Court. Judge Carney's affidavit merely tends to bolster Attorney Julian's testimony at trial in which she alleged that there was no Order ratifying the General Master's Report because it was never officially entered in the record. Attorney Julian's affidavit explains the circumstances surrounding how she obtained Judge Carney's affidavit. Neither has any bearing on whether the Defendant failed to disclose to the Territorial Court during his Custody hearing that a Court in Florida ordered him to return the minor children to Broward County or that his wife was awarded primary residential custody. Moreover, the Court must take notice that Judge Carney's affidavit is unsworn and the jury has already made a determination regarding the credibility of Ms. Julian's testimony. In sum, Defendant has failed to show that Judge Carney's unsworn affidavit and Attorney Julian's affidavit are material evidence that would warrant a new trial.

### 5. Likelihood of Acquittal

With respect to the final requirement, *i.e.,* whether the evidence is of such a nature that would have probably produced an acquittal, the Court only has to assess whether there was sufficient independent evidence to support a conviction, rather than whether the evidence was likely to create a reasonable doubt. *Saada, supra,* at 217. The record conclusively demonstrates that there was sufficient independent evidence to support the jury's findings of guilt. The Government presented the transcript of Defendant's September 7, 2000, Custody hearing along with Defendant's Petition for Custody, both of which the jury had an opportunity to examine and make a determination regarding Defendant's concealment from the Territorial Court of the existence of the General Master's

Report and the Florida Court Order. The Government also presented witnesses at trial whose testimony provided support for its case and whom the jury evidently believed to be credible. The jury elected to believe the evidence offered against Defendant rather than that which was offered in his favor. Having weighed the evidence, the Court is convinced that it was sufficient to support the verdict. *See, Government of Virgin Islands v. Leycock*, 93 F.R.D. 569, 19 V.I. 59, 62 (D.V.I. 1982), citing *U.S. v. Wright*, 625 F.2d 1017 (1st Cir. 1980). Accordingly, the evidence would not have likely produced an acquittal.

Based upon the foregoing, the conclusion is warranted that the Defendant has failed to meet any of the prerequisites for a new trial set out in *Iannelli* and, accordingly, his Motion for same must be denied.

### III. Motion for Arrest of Judgment

■ Pursuant to Rule 34 of the F.R. CRIM. P., a Motion for Arrest of Judgment must be based upon failure of the indictment to charge an offense or upon a finding that the Court lacks subject matter jurisdiction. *See, U.S. v. Hudson*, 422 F. Supp. 395 (E.D. Pa. 1976). The Court notes that the Defendant's Motion cites no authority or grounds in support of an arrest of judgment. Defendant's Motion also does not even allege any facts that would entitle him to relief. In any event, the Information charging Defendant clearly sets forth offenses cognizable under the laws of the Virgin Islands. Moreover, the Court has subject matter jurisdiction pursuant to Title 4 V.I.C. § 76(b) and Section 22(b) of the Revised Organic Act of 1954, as amended. Accordingly, Defendant having failed to meet the requirements of Rule 34 of the F.R. CRIM. P., his "Motion for Judgment of Acquittal, New Trial, Arrest of Judgment and Extension of Time" is DENIED.